IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ADDVANTAGE TECHNOLOGIES GROUP, INC. | § | CASE NO. 24-40225 (Chapter 7) |
| | § | |
| DEBTOR | § | |

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| NAVE COMMUNICATIONS COMPANY, | § | CASE NO. 24-40227 (Chapter 7) |
| DEBTOR | § | |

**MOTION FOR APPROVAL SETTLEMENT**
**AGREEMENT WITH PALCO TELECOM SERVICES, INC.**

**Notice**

**Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you must file a written objection, explaining the factual and/or legal basis for opposing the relief.**

**No hearing will be conducted on this application unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading *WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE* shown in the certificate of service unless the court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The court reserves the right to set a hearing on any matter.**

**TO THE HONORABLE BRENDA T. RHOADES, U.S. BANKRUPTCY JUDGE:**

Linda S. Payne, Chapter 7 Trustee ("***Trustee***") files her Motion for Approval of Settlement Agreement with Palco Telecom Services, Inc. ("***Motion***") as follows:

## Background

1. On January 31, 2024 (the "***Date of Bankruptcy***"), ADDvantage Technologies Group, Inc. ("***ADDvantage***") and Nave Communications Company ("***Nave***") each filed with this Court a voluntary petition under Chapter 7 of the Bankruptcy Code.

2. Linda S. Payne is the acting Chapter 7 Trustee of the ADDvantage and Nave bankruptcy estates.

3. On February 26, 2018, Palco, ADDvantage and Nave entered into a Master Services Agreement ("***MSA***") whereby Nave would send certain inventory to Palco to store, inventory, manage, test, refurbish, package and ship to certain buyers in the normal course of its business.

4. As of the Date of Bankruptcy Palco was owed $513,009.35 from Nave for the services it performed under the MSA.

5. On April 2, 2024, Palco filed Proof of Claim No. 22 as a secured claim in the amount of $513,009.35 ("the "***Nave Proof of Claim***") in the Nave bankruptcy case.

6. On April 2, 2024, Palco filed Proof of Claim No. 15 as a secured claim in the amount of $53,009.35 (the "***ADDvantage Proof of Claim***") in the ADDvantage bankruptcy case.

7. Palco asserts a warehouse lien on the Nave inventory in its possession (the "***Palco Maintained Inventory***") pursuant to Alabama Code Statute 7-7-209. Palco maintains the date of the perfection of its lien dates back to February 26, 2018, which is the date of the MSA.

8. Palco asserts it is entitled to an administrative expense claim for the post-petition storage costs and expenses it has incurred relating to the Palco Maintained Inventory (the "***Administrative Claim***").

9. On June 18, 2025, the Bankruptcy Court entered its Order Granting Motion for Approval of Sale, Employment of Sellers's Agent and Settlement Agreement (the "***Sale and Settlement Order***") (ECF 67).

10. The Sale and Settlement Order: (i) authorized Palco to sell the Palco Maintained Inventory, to retain a 15% commission, to be reimbursed its expenses of sale and to be reimbursed its expenses of picking and shipping the inventory; (ii) provided that Palco would retain 75% of the net sales proceeds and remit 25% of the net sales proceeds to the Trustee as unencumbered cash; (iii) provided that Palco would apply the 75% of net sale proceeds to reduce the amounts owed under the Palco Proof of Claim; and (iv) provided that once Palco received 75% of the net proceeds from the sale of the Palco Maintained Inventory that Palco would waive its administrative claim.

11. The Parties acknowledge and agree that the remaining unsold Palco Maintained Inventory consists of picked-over, nonmarketable items that are of only nominal value and of inconsequential benefit to the bankruptcy estate and will likely require an extended period of time to liquidate.

12. The Parties desire to fully and finally resolve all remaining issues relating to the MSA, the Palco Maintained Inventory, the Test Beds, the Nave Proof of Claim, the ADDvantage Proof of Claim, the Administrative Claim and the Sale and Settlement Order.

**<u>Overview of the Agreement</u>**

13. The full terms of the sale and settlement are set forth in the Agreement attached as Exhibit "A". In essence, the Agreement provides for the complete resolution of all duties, obligations and responsibilities of the Trustee and Palco relating to the Palco Maintained Inventory and the resolution of all Palco claims.

14. The following is a summary of the key provisions of the Agreement:

(a) All remaining sale obligations relating to unsold Palco Maintained Inventory will be terminated, and Palco will have no further duty to market or sell the inventory.

(b) Any unsold Palco Maintained Inventory in Palco's possession will be deemed abandoned and may be handled or disposed of by Palco in its sole discretion.

(c) The Test Beds in Palco's possession become Palco's property, free and clear

of any claims by the Trustee or the Nave estate.

(d) Palco will withdraw the Nave Proof of Claim and thereafter will have no further claims against the Nave bankruptcy estate.

(e) Palco will withdraw the ADDvantage Proof of Claim and thereafter will have no further claims against the ADDvantage bankruptcy estate.

(f) Palco will irrevocably waive and withdraw all administrative expense claims against the Nave bankruptcy estate and against the ADDvantage bankruptcy estate.

(g) Mutual releases will be granted.

**Request for Approval of the Agreement**

15. By this Motion, Trustee seeks authority to enter into an Agreement which will resolve all issues relating to the MSA, the Palco Maintained Inventory, the Test Beds, the Palco proofs of claim, Palco's administrative claim, and all issues regarding the Sale and Settlement Order.

16. Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), the Trustee respectfully requests that the Court approve the settlement set forth in the Agreement and authorize the Trustee and Palco to sign whatever documents are necessary to consummate the Agreement.

17. Bankruptcy Rule 9019(a) generally governs settlements in bankruptcy cases. It provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the Court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Rule 9019(a) empowers the Bankruptcy Court to approve a compromise and settlement if it is (a) fair and equitable, and (b) in the best interest of the estate. *In re Cajun Electric Power Cooperative, Inc.,* 119 F.3d 349, 355 (5th Cir. 1997); *In re Mirant,* 348 B.R. 725, 738 (Bankr. N.D. Tex. 2006).

18. The decision to approve a compromise or settlement is within the sound discretion of the Bankruptcy Court. *River City v. Herpel* (*In re Jackson Brewing Co.*), 624 F.2d 599, 602-603 (5th Cir. 1980). "Compromises are favored in bankruptcy" because they minimize litigation costs and

expedite the administration of the bankruptcy estate. *In re Idearc, Inc.,* 423 B.R. 138, 182 (Bankr. N.D. Tex. 2009). The Bankruptcy Court, however, should not substitute its own judgment for the judgment of a trustee or a debtor. *See In re Carla Leather, Inc.,* 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984), *aff'd,* 50 B.R. 764 (S.D.N.Y. 1985). "One of the goals of Congress in fashioning the Bankruptcy Code was to encourage parties in distress situations to work out a deal among themselves." *In re Mirant Corp.,* 334 B.R. 800, 811 (Bankr. N.D. Tex. 2005). Thus, in assessing a settlement, a court need only "canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness". *Cosoff v. Rodman (In re W.T. Grant Co.),* 699 F.2d 599, 608 (2nd Cir. 1983).

19. In this Circuit, a bankruptcy settlement should be approved under Rul 9019 "if the settlement is fair and equitable and in the best interests of the estate". *See In Re Cajun,* 119 F.3d 349, 355 (5thCir. 1977). In deciding whether a proposed settlement is fair and equitable, the Court should analyze the following four factors (the "*Cajun Electric Factors")*:

(a) the probability of success in litigation;

(b) the complexity, expense, and likely duration of such litigation, and attendant expense, inconvenience or delay, and possible problems collecting a judgment;

(c) The interests of creditors with proper deference to their reasonable views; and

(d) The extent to which the settlement is truly the product of arm's length negotiations.

*Mirant,* 348 B.R. at 739-40 (citing *Cajun Electric Power Coop, Inc.,* 119 F.3d at 355-56).

20. The proposed settlement agreement satisfies the *Cajun Electric Factors* because, given the Parties acknowledgement that the remaining inventory is picked-over and of nominal value to the bankruptcy estate, further attempts to sell the inventory are unlikely to yield a meaningful recovery for creditors and will substantially delay the closing of the case and payment of creditors.

The proposed settlement agreement eliminates the secured proofs of claim filed by Palco and eliminates any administrative expense claims of Palco. The resolution of the Palco claims is a concrete and immediate benefit to the bankruptcy estate.

21. Finally, the terms of the proposed Agreement were the product of good faith discussions, in which each party analyzed its respective positions, made concessions in an effort to resolve complex disputes, and agreed to enter into a compromise because doing so served their independent interests. Thus, the Agreement is the result of arm's-length, good faith negotiations by and among the parties.

22. The Trustee believes the Agreement to be in the best interests of the bankruptcy estate. Accordingly, the Trustee respectfully requests that the Court exercise its discretion pursuant to Bankruptcy Rule 9019(a) and approve the Agreement.

23. Based upon the foregoing, the Agreement meets the applicable standards for approval, including satisfying all four of the *Cajun Electric* Factors, is fair and equitable, is in the best interests of creditors and the Debtor's bankruptcy estate, and represents the exercise of sound and prudent business judgment. Moreover, subject to the Court's approval, the Agreement will allow the Trustee to promptly close the bankruptcy estates and make a distribution to creditors..

WHEREFORE, PREMISES CONSIDERED Trustee requests that the Court grant the Motion and authorize the Trustee to enter into the Agreement and grant the Trustee such relief as is necessary and proper.

Respectfully submitted,

QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
2200 Ross Avenue, Suite 2400
Dallas, Texas 75201
(214) 880-1805 (Telephone)
cmoser@qslwm.com (Email)

By: *_/s/ Christopher J. Moser_*
Christopher J. Moser

ATTORNEYS FOR TRUSTEE

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of June 2026, a true and correct copy of the foregoing document was served via the Court's ECF system upon all persons who have filed ECF appearances in this case, and by U.S. first class mail, postage prepaid, on the persons and entities set forth on the attached service list.

*_/s/ Christopher J. Moser_*